INf THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


A.S., A Minor, by SALLEE      :      CIVIL ACTION
MILLER, Guardian, and         :
SALLEE MILLER, Individually   :
                              :
              v.              :
                              :
SMITHKLINE BEECHAM            :
CORPORATION d/b/a             :
GLAXOSMITHKLINE               :      NO. 13-3684


MEMORANDUM

McLaughlin, J.                          August 16, 2013


        The plaintiffs allege that A.S., a minor, was born

with birth defects after the mother took a prescription drug,

Paxil, produced by the defendant, GlaxoSmithKline LLC ("GSK").

GSK now moves to transfer the case to the Middle District of

Pennsylvania under 28 U.S.C. § 1404(a), arguing that the Middle

District would be a more convenient venue because the plaintiffs

reside in that district, the prescription for the drug was made

and filled in that district, and the most essential fact

witnesses reside in that district.  The Court will grant the

motion and transfer the case to the Middle District of

Pennsylvania.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The Court is required to consider the above factors, namely the interest of justice and the convenience of the parties and witnesses, as well as several additional private and public interest factors.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).

The private interest factors that a court considers include:

> [1] [The] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (citations omitted).  The public interest factors include:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the

> trial judge with the applicable state law in diversity
> cases.

Id. at 879-80 (citations omitted).  The defendant bears the

burden of proving that transfer is needed.  Id.

The private interest factors require the action to be

transferred to the Middle District of Pennsylvania.  First,

although plaintiffs' choice of venue normally receives deference

by the courts and should not be lightly disturbed, Jumara, 55

F.3d at 879, the plaintiffs do reside in the Middle District of

Pennsylvania, not in the Eastern District.  Second, GSK states

that it prefers the Middle District of Pennsylvania as the forum

for this lawsuit.

Third, plaintiffs allegedly have been prescribed

Paxil, ingested Paxil, and received medical treatment in the

Middle District of Pennsylvania.  Although GSK's actions

allegedly occurred at GSK's headquarters in Philadelphia, the

plaintiffs' physical injuries occurred in the Middle District of

Pennsylvania.

Fourth, plaintiffs state they have chosen to litigate

in the Eastern District of Pennsylvania due to perceived cost

effectiveness and efficiencies in that forum.  Plaintiffs reside

in the Middle District of Pennsylvania, however, and transfer to

that district will not inconvenience plaintiffs in their

physical location.  Furthermore, GSK is a multinational company

with employees residing outside the Eastern District who have knowledge that may be related to this suit. Therefore, the Middle District is not an inconvenient forum for both parties.

Fifth, witnesses relevant to this action have been identified as residing in the Middle District of Pennsylvania. Jumara emphasizes that analyzing the convenience of the witnesses should focus on "the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. The subpoena power of this Court cannot compel any nonparty witnesses located more than 100 miles from Philadelphia to attend trial there. Fed. R. Civ. P. 45(b)(2), (c)(3)(B)(iii). For example, the distance from Waynesboro, Pennsylvania, to Philadelphia, Pennsylvania is greater than 100 miles. Although GSK does not argue that any specific nonparty witnesses are unavailable for trial in the Eastern District, it is possible that some witnesses, particularly those located in Waynesboro, may be subject to the Court's subpoena power in the Middle District of Pennsylvania but not in the Eastern District. It is also true that concerns about subpoena power limits are shared by both parties, but GSK does have the ability to agree to make company witnesses available. Therefore, the fifth factor weighs in favor of transfer.

Sixth, there are likely to be relevant books and records located in both forums. Namely, medical records related

to plaintiffs' injuries are likely to be near plaintiffs'
residence and treating physicians in Waynesboro, Pennsylvania.
GSK's records are also likely to be near its headquarters in
Philadelphia.  Federal Rule of Civil Procedure 34 allows for
compulsory production of documents and other electronically
stored information regardless of where the documents are located
or the venue in which the case is tried.  Therefore, this factor
is neutral.

The public interest factors also require the action to
be transferred.  First, the enforceability of the judgment has
little relevance here because it is unlikely that there would be
any significant difference in the difficulty of enforcing a
judgment rendered by either the Eastern District or the Middle
District of Pennsylvania.  Second, neither party has highlighted
any further practical considerations that would make the trial
easy, expeditious, or inexpensive in either forum.

Third, the Middle District of Pennsylvania's docket is
less congested than the docket of the Eastern District.
Although there are more federal judges in the Eastern District
of Pennsylvania than in the Middle District, the congestion of
cases in the Eastern District outweighs the discrepancy in the
number of judges.  During the twelve-month period between March
31, 2011 and March 31, 2012, the Eastern District of
Pennsylvania had 17,043 pending cases, and the Middle District

5

of Pennsylvania had 2250 pending cases.  U.S. District Courts –
Civil Cases Commenced, Terminated, and Pending During the 12-
Month Periods Ending March 31, 2011 and 2012, United States
Courts (Mar. 31, 2012),
http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCasel
oadStatistics/2012/tables/C00Mar12.pdf.

Fourth, the factor involving the local interest in
deciding local controversies at home is neutral.  There is a
public interest in having the controversy adjudicated in the
action where the injuries to the plaintiffs occurred, namely in
the Middle District.  There is also a local interest in the
Eastern District in policing a business entity headquartered in
Philadelphia.  Therefore, the local interest factor does not
resolve in favor of or against transfer.

Fifth, neither party has highlighted any public
policies of either fora that would affect the transfer analysis.
Lastly, because both federal district courts are located in
Pennsylvania, the judges of both districts should be similarly
familiar with Pennsylvania law governing this diversity action.

Because both the private and public factors under
Jumara favor transfer, the Court will grant the motion to
transfer to the Middle District of Pennsylvania.

An appropriate Order will issue.